Craig M. Murphy, Esq.
California Bar No. 314526
MURPHY & MURPHY LAW OFFICES
4482 Market Street, Ste 407
Ventura, CA 93003
Phone; (805) 330-3393
Fax: (702) 369-9630
craig@nvpilaw.com

William D. Marler, Esq.
(*pro hac vice* application forthcoming)
MARLER CLARK, LLP, PS
1012 1st Avenue, Fifth Floor
Seattle, Washington 98104
Phone: (206) 346-1888
Fax: (206) 346-1898
bmarler@marlerclark.com

Attorneys for Intervenor-Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KOR SERVICES, LLC d/b/a KOR PRODUCE, a Pennsylvania Limited Liability Company,<br><br>              Plaintiffs,<br><br>    v.<br><br>THOMSON INTERNATIONAL, INC. a California corporation,<br><br>            Defendant. | Case No.: 2:21-cv-03695-SSS-PD<br><br>**INTERVENOR-PLAINTIFFS' NOTICE OF MOTION AND MOTION TO INTERVENE PURSUANT TO FED. R. CIV. P. 24**<br><br>Hearing Date: September 23, 2022<br>Hearing Time: 2:00 P.M.<br>Judge Sunshine Suzanne Sykes |

## NOTICE OF MOTION AND MOTION

TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 23, 2022 at 2:00 p.m. or as soon thereafter as may be held in the above-captioned Court, the following Intervenor-Plaintiffs will and hereby move pursuant to Rule 24 of the Federal Rules of Civil Procedure to intervene as plaintiffs in the above-captioned action:

- Antonnette Sartori

- Demarquez Austin

- Susan Garofalo

- Howard Jackson

- Marcia and Robert Paquette, together with their minor child, D.P.

- Ann Sams

- Keith Willis

(Hereinafter, collectively referred to as "Intervenor-Plaintiffs")

As set forth in the accompanying Memorandum of Points and Authorities, intervention is warranted as of right because Intervenor-Plaintiffs' motion is timely, Intervenor-Plaintiffs have a substantial legal interest in this matter, and the intervention is necessary to protect Intervenor-Plaintiffs' interests, which cannot be adequately represented or protected by the current parties to this action, and which will be impaired if this intervention is not permitted. *See* Fed. R. Civ. P. 24(a)(2).

In the alternative, the Intervenor-Plaintiffs should be granted leave for permissive intervention under Fed. R. Civ. P. 24(b), because they have each filed claim against Defendant Thomson International Inc. (hereinafter, "Thomson") in the United States District Court, Eastern District of California, and their claims share common questions of law and fact with this action.

**I.**

**MEMORANDUM OF POINTS AND AUTHORITIES**

Intervenor-Plaintiffs respectfully move, pursuant to Federal Rule of Civil Procedure 24, to intervene as plaintiffs in this action filed by KOR Produce against Thomson International, Inc. ("Thomson"). Intervenor-Plaintiffs move to intervene as of right, or, alternatively, by permission, to assert claims against Thomson arising from the Intervenor-Plaintiffs' respective *Salmonella* infections which resulted from their consumption of contaminated onions sourced from Defendant, Thomson, and which were later recalled due to potential *Salmonella* contamination ("2020 Onion Recall").

///

MURPHY & MURPHY LAW OFFICES
4482 Market Street, Ste 407
Ventura, CA 93003
Telephone (805) 330-3393
Facsimile (702) 369-9630

MURPHY & MURPHY LAW OFFICES
4482 Market Street, Ste 407
Ventura, CA 93003
Telephone (805) 330-3393
Facsimile (702) 369-9630

1    **STATEMENT OF COMPLIANCE WITH L.R. 7-3**

2         This motion is made following the conference of counsel pursuant to L.R. 7-3 which took

3    place on or around June 24, 2022.

4    **PRELIMINARY STATEMENT AND BACKGROUND**

5         This action arises from the Intervenor-Plaintiffs' respective *Salmonella* infections which

6    resulted from their consumption of contaminated onions sourced from Thomson, and which were

7    later recalled due to potential *Salmonella* contamination.

8    **An Outbreak of Salmonella Associated with Thomson Red Onions**

9         In 2020, CDC, public health and regulatory officials in several states, FDA, and

10   Canada investigated a multistate outbreak of *Salmonella* Newport infections linked to onions.

11        Public health investigators used the PulseNet system to identify illnesses that were

12   part of this outbreak. PulseNet is the national subtyping network of public health and food

13   regulatory agency laboratories coordinated by CDC. DNA fingerprinting is performed

14   on *Salmonella* bacteria isolated from ill people by using a standardized laboratory and data analysis

15   method called whole genome sequencing (WGS). CDC PulseNet manages a national database of

16   these sequences that are used to identify possible outbreaks. WGS gives investigators detailed

17   information about the bacteria causing illness. In this investigation, WGS showed that bacteria

18   isolated from ill people were closely related genetically. This means that people in this outbreak

19   were likely to share a common source of infection.

20        A total of 1,127 people infected with the outbreak strain of *Salmonella* Newport were

21   reported from 48 states.

22        Illnesses started on dates ranging from June 19, 2020, to September 11, 2020. Ill people

23   ranged in age from less than 1 to 102 years, with a median age of 41. Fifty-eight percent of ill

24   people were female. Of 705 ill people with information available, 167 people were hospitalized. No

25   deaths were reported.

26        Epidemiologic and traceback evidence showed that red onions from Thomson International

27   Inc. were the likely source of this outbreak. Other onion types (such as white, yellow, or sweet

28   yellow) were also likely to be contaminated because the onions were grown and harvested together.

MURPHY & MURPHY LAW OFFICES
4482 Market Street, Ste 407
Ventura, CA 93003
Telephone (805) 330-3393
Facsimile (702) 369-9630

In interviews, ill people answered questions about the foods they ate and other exposures in the week before they became ill. Ninety-one percent of people reported eating onions or foods likely containing onions in the week before their illness started. Of the 208 people who were asked what types of onions they ate, 137 (66%) ate red onions, 130 (63%) ate white onions, and 110 (53%) ate yellow onions. Most ill people reported eating more than one type of onion.

FDA and states reviewed records where ill people purchased or ate onions and foods containing onions. This traceback investigation identified Thomson International Inc. as the likely source of red onions.

The Public Health Agency of Canada (PHAC) and The Canadian Food Inspection Agency (CFIA) also investigated an outbreak of *Salmonella* Newport infections in Canada that was related genetically by WGS to the U.S. outbreak. Their investigation identified red onions from Thomson International Inc. as the likely source of their outbreak.

On August 1, 2020, Thomson International Inc. recalled all red, yellow, white, and sweet yellow onions because they may have been contaminated with *Salmonella*. Other companies also recalled onions or foods made with recalled onions.

As of October 8, 2020, this outbreak appears to be over. The FDA released an additional report on May 13, 2021, confirming onions supplied by Thomson International Inc.— particularly those grown in the Southern San Joaquin Valley and Imperial Valley in California—as the source of 1,127 reported illnesses in the U.S. and 515 in Canada.

The updated FDA findings suggested multiple plausible opportunities for contamination of implicated onion fields including irrigation water, sheep grazing on adjacent land, as well as signs of animal intrusion, such as scat and large flocks of birds which can spread contamination. Additionally, visual observations and records review of packing house practices confirmed numerous opportunities for spread of foodborne pathogens such as *Salmonella,* including signs of animal and pest intrusion as well as food contact surfaces which had not been inspected, maintained, cleaned, or sanitized as frequently as necessary to protect against the contamination of produce.

The FDA's investigation of the farms and fields were all conducted after the Thomson

recalls, but nonetheless provided insights on several factors potentially contributing to the contamination of onions grown in Holtville (Imperial Valley) and/or Bakersfield (Southern San Joaquin Valley). Notably, while none of the samples taken post-recall tested positive for the outbreak strain of *Salmonella* Newport, several samples did test positive for other strains of *Salmonella* Newport as well as other *Salmonella* serotypes.

Multiple water samples collected from irrigation canals in the growing areas in Holtville tested positive for *Salmonella* Newport, and samples of irrigation water in Bakersfield also indicated the presence of *Salmonella*. The FDA investigation noted that irrigation water used to grow onions is not customarily treated before application to the field. Further, a concentrated animal feed operation was also observed to be less than a half mile form onion fields and immediately adjacent to an irrigation canal supplying water to onion crops in Bakersfield.

## INTERVERNOR-PLAINTIFFS' *SALMONELLA* INFECTIONS

### a) Anntonette Sartori's *Salmonella* Infection

Anntonette purchased food from the EveryPlate food service on several occasions in June 2020. Several meal kits that Anntonette purchased and consumed contained onions sourced from Thomson and which were later recalled due to potential *Salmonella* contamination. Anntonette experienced symptom onset of her *Salmonella* infection on or about June 29-30, including diarrhea, nausea, and chills.

Anntonette's condition continued to deteriorate, and she sought medical attention on July 1, 2020, via MD Live Telehealth. She then sought further medical attention at Harrison Medical Center on July 2, 2020, where she was admitted to the hospital. She remained hospitalized for four days.

While in the hospital, Anntonette's blood sample tested positive for *Salmonella* species. CDC later classified her as a confirmed case in the Thomson onions *Salmonella* Newport outbreak (CDC Outbreak ID: 2007MLJJP-1).

Once Anntonette was discharged from the hospital, her symptoms continued through the entire month of July. She continued to feel low energy for several months afterwards.

///

MURPHY & MURPHY LAW OFFICES
4482 Market Street, Ste 407
Ventura, CA 93003
Telephone (805) 330-3393
Facsimile (702) 369-9630

b) **Demarquez Austin's *Salmonella* infection**

Sometime during the two weeks before July 12, 2020, Demarquez was exposed to onions manufactured by Thomson.

Demarquez experienced symptom onset of his *Salmonella* infection on or about July 12, 2020, including severe abdominal pain, diarrhea, and vomiting.

When his condition did not improve, he sought medical care at Overlake Medical Center in Bellevue, Washington on July 13, 2020.

A stool sample collected from Demarquez tested positive for *Salmonella* on July 15, 2020. CDC later classified Demarquez as a confirmed case in the Thomson onions *Salmonella* Newport outbreak (CDC Outbreak ID: 2007MLJJP-1).

c) **Susan Garofalo's *Salmonella* infection**

Susan purchased red onions from the Mariano's Grocery store in Aurora, Illinois on June 1, 2020. She consumed these onions in the weeks following her purchase. The onions she purchased were supplied by Defendant Thomson and were later recalled due to their contamination with *Salmonella.*

Susan experienced symptom onset of her Salmonella infection on or about July 19, 2020, including stomach cramps, diarrhea, and headaches.

Susan's condition continued to deteriorate, prompting her to seek professional medical care on July 24, 2020, from Edward Medical Group. At a subsequent medical appointment, Susan submitted a stool sample which tested positive for *Salmonella* species.

The Illinois Department of Public Health confirmed the Susan's stool sample as *Salmonella* Newport, and whole genome sequencing confirmed that she was infected with the outbreak strain of *Salmonella* Newport associated with the Thomson Onions *Salmonella* outbreak (CDC ID: 2007MLJPP).

Despite taking a seven-day course of antibiotics for her *Salmonella* infection, Susan required several additional medical consultations over the next few months, including a hospital visit on August 14, 2020, at Edward Hospital.

///

MURPHY & MURPHY LAW OFFICES
4482 Market Street, Ste 407
Ventura, CA 93003
Telephone (805) 330-3393
Facsimile (702) 369-9630

MURPHY & MURPHY LAW OFFICES
4482 Market Street, Ste 407
Ventura, CA  93003
Telephone (805) 330-3393
Facsimile (702) 369-9630

**d)  Howard Jackson's *Salmonella* infection**

Howard purchased and consumed a burrito from Gerardo's Mexican Restaurant in Spokane, Washington on July 5, 2020. The burrito contained onions sourced from Defendant, Thomson and which were later recalled due to potential *Salmonella* contamination.

Howard experienced symptom onset of his *Salmonella* infection in the middle of the night on or about July 5-6, 2020, including stomach pain, diarrhea, and vomiting.

Howard's condition continued to deteriorate, and he sought professional medical treatment on July 10, 2020, at Providence Regional Medical Center in Everett, Washington.

Howard submitted a stool sample while in the hospital which tested positive for *Salmonella* species on July 12, 2020.

The Washington State Department of Health confirmed Howard's stool sample as *Salmonella* Newport, and whole genome sequencing confirmed that he was infected with the outbreak strain of *Salmonella* Newport associated with the Thomson Onions Salmonella outbreak (CDC ID: 2007MLJPP).

**e)  The Paquettes' *Salmonella* infections**

On July 19, 2020, Robert and Marcia Paquette, together with their minor child D.P shared a meal at the Bar Ten Ranch in Arizona while vacationing to the Grand Canyon National Park. The meal served at Bar Ten Ranch contained onions produced and sourced by Defendant Thomson, which were later recalled due to their potential contamination with *Salmonella* Newport.

All three members of the Paquette family began experiencing the onset of their *Salmonella* infection on or about July 20, 2020. Marcia's symptoms began in the morning, and Robert's and D.P.'s symptoms began later in the evening. Each of them experienced bouts of diarrhea, nausea, and fever.

Marcia and Robert's condition continued to deteriorate over the next several days, prompting them both to seek professional medical treatment.

D.P. suffered from ongoing diarrhea for several days but did not require medical care. Robert submitted a stool culture pursuant to his doctor's orders which tested positive for *Salmonella* species on July 24, 2020.

MURPHY & MURPHY LAW OFFICES
4482 Market Street, Ste 407
Ventura, CA 93003
Telephone (805) 330-3393
Facsimile (702) 369-9630

1    Marcia required hospital admission for her *Salmonella* illness and was treated for days at

2   Charleton Memorial Hospital three days. A stool sample she provided during her admission tested

3   positive for *Salmonella* species on July 24, 2020.

4    Both Marcia and Robert's stool samples underwent additional analysis by the Massachusetts

5   Department of Public Health Laboratory which determined that the specimens contained *Salmonella*

6   Newport.

7    Whole genome sequencing revealed that both Robert and Marcia were infected with the

8   outbreak strain of *Salmonella* Newport associated with Defendant Thomson's onions. (CDC

9   Outbreak ID: 2007MLJJP).

10   **f)  Ann Sams' *Salmonella* infection**

11    Sometime during the two weeks before August 6, 2020, Ann was exposed to onions

12   manufactured by Defendant, Thomson.

13    Ann experienced symptom onset of her *Salmonella* infection on August 6, 2020, including

14   bloody stool, fever, abdominal pain, chills, dizziness, and headache.

15    After several days, when Ann's condition did not improve, she sought medical care at

16   AdventHealth Hendersonville on August 9, 2020. She was discharged the following day to continue

17   her convalescence at home.

18    That same day, August 10, 2020, Ann went to her primary care physician at

19   Community Family Practice.

20    A stool sample collected from Ann at that provider tested positive for *Salmonella*. CDC later

21   classified her as a confirmed case in the Thomson onions Salmonella Newport outbreak (CDC

22   Outbreak ID: 2007MLJJP-1).

23   **g)  Keith Willis' *Salmonella* infection**

24    During the month of June 2020, Keith purchased and consumed Defendant Thomson's red

25   onions.

26    Keith began to first feel ill on or about July 1, 2020. He felt weak with nausea and

27   developed severe diarrhea and headaches. He was seen by his treating physician who ordered a

28   stool culture. That culture eventually came back positive for *Salmonella* Newport. He was

1  subsequently placed on antibiotics.

2      Keith was contacted by the San Diego Department of Health, which confirmed

3  that he was part of the Thomson *Salmonella* Newport Outbreak (CDC Outbreak ID: 2007MLJJP)

4            **INTERVENOR-PLAINTIFFS LAWSUITS AGAINST THOMSON**

5              **IN EASTERN DISTRICT OF CALIFORNIA**

6      All Intervenor-Plaintiffs filed lawsuits against Defendant Thomson pursuant to their

7  respective infections with *Salmonella* as described above, linked to the Thomson *Salmonella*

8  Newport Outbreak (CDC Outbreak ID: 2007MLJJP). With the exception of Intervenor-Plaintiff

9  Keith Willis' lawsuit against Thomson, which is filed in the Superior Court for the State of

10  California, County of San Diego, all other lawsuits were filed in the United States District Court,

11  Eastern District of California. All remain in the early stages of fact discovery, with the exception of

12  Keith Willis' lawsuit.

13    • Anntonette Sartori, lawsuit filed on January 5, 2022: *Anntonette Sartori. v. Thomson

14       International, Inc.*, Case No. 1:22−CV−00027−DAD−BAK.

15    • Demarquez Austin, lawsuit filed on March 31, 2022: *Demarquez Austin v. Thomson

16       Thomson International, Inc.,* Case No. 1:22-cv-00388-AWI-BAK.

17    • Susan Garofalo, lawsuit filed on January 6, 2022: *Susan Garofalo v. Thomson

18       International Inc.,* Case No. 1:22-cv-00037-JLT-BAK (SKO).

19    • Howard Jackson, lawsuit filed on January 6, 2022: *Howard Jackson v. Thomson

20       International Inc.,* Case No. 1:22-cv-00038-JLT-BAK (SKO).

21    • Marcia and Robert Paquette, together with their minor child, D.P, lawsuit filed on

22       January 6, 2022: *Paquette v. Thomson International Inc.,* Case No. 1:22-cv-00034-

23       JLT-BAK (SKO)

24    • Ann Sams, lawsuit filed on March 31, 2022: *Ann Sams v. Thomson International

25       Inc.,* Case No. 1:22-cv-00387-DAD-BAK.

26    • Keith Willis, lawsuit filed on August 03, 2020: *Keith Roberts Willis v Thomson

27       International Inc.,* Case No. 37-2020-00027164-CU-PL-CTL

28  (Hereinafter, collectively referred to as **"Intervenor-Plaintiffs' Cases"**).

MURPHY & MURPHY LAW OFFICES
4482 Market Street, Ste 407
Ventura, CA 93003
Telephone (805) 330-3393
Facsimile (702) 369-9630

# ARGUMENT

## I.   THE COURT SHOULD PERMIT INTERVENOR-PLAINTIFFS TO INTERVENE AS OF RIGHT

Federal Rule of Civil Procedure 24(a)(2) provides that "the court must permit" the timely intervention of an intervening party who "claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24. Intervenor-Plaintiffs seeking to intervene as of right must satisfy a four-part test to determine whether intervention should be granted: (1) the motion is timely, (2) the movant "claims an interest relating to the property or transaction that is the subject of the action," (3) "disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest," and (4) existing parties to the action do not adequately represent that interest Fed. R. Civ. P. 24(a)(2); see *Citizens for Balanced Use v. Mont. Wilderness Ass'n,* 647 F.3d 893, 897 (9th Cir. 2011) (citing *Prete v. Bradbury,* 438 F.3d 949, 954 (9th Cir. 2006).

Courts "construe Rule 24(a) liberally in favor of potential intervenors." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006). "A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *United States v. City of Los Angeles*, 288 F.3d 391, 397-98 (9th Cir. 2002). Broadly interpreting Rule 24(a) "prevent[s] or simplif[ies] future litigation involving related issues" and "allow[s] an additional interested party to express its views before the court." *Id*. at 398. As discussed below, the Intervenor-Plaintiffs meet the standard for intervention as of right.

### A.  Intervenor-Plaintiffs' motion is timely.

"To determine whether a motion to intervene is timely, [courts] consider '(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay.'" *Peruta v. Cty. of San Diego*, 824 F.3d 919, 940 (9th Cir. 2016) (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004)).

Applying these principles in this case, Intervenor-Plaintiffs' motion to intervene is timely because the proceedings in the main action are at a very early stage, intervention now would not

MURPHY & MURPHY LAW OFFICES
4482 Market Street, Ste 407
Ventura, CA 93003
Telephone (805) 330-3393
Facsimile (702) 369-9630

MURPHY & MURPHY LAW OFFICES
4482 Market Street, Ste 407
Ventura, CA 93003
Telephone (805) 330-3393
Facsimile (702) 369-9630

1   cause prejudice to the original parties, and Intervenor-Plaintiffs have not delayed in moving to

2   intervene.

3          First the case is in the early stages of proceedings as the original parties are in early

4   exchanges of fact discovery. Intervenor-Plaintiffs' intervention would not impede on discovery,

5   especially when considering that the original parties have not conducted extensive written

6   discovery, and no depositions have been taken by either party.

7          Secondly, the Parties will also not suffer any prejudice with this intervention. As already

8   noted, the Parties are still in the early stages of fact discovery. Considering the Intervenor-Plaintiffs'

9   Cases, it would be the interest of judicial expediency to allow intervention in this case as the parties

10  would better coordinate discovery and any other motion proceedings and practices that would

11  otherwise be duplicated if this case and the Intervenor-Plaintiff Cases were to proceed

12  independently.

13         Thirdly, Intervenor-Plaintiffs have has not delayed in filing this motion. Except for the Keith

14  Willis case, all other Intervenor-Plaintiff Cases were either filed in January or March of 2022. Since

15  filing these complaints, Intervenor-Plaintiffs and their attorneys have diligently evaluated the issues

16  presented by the complaints and determined that intervention is necessary to protect their unique

17  interests in this case.

18         **B. Intervenor-Plaintiffs have a substantial legal interest in this matter.**

19         To intervene as of right under Rule 24(a), the movant must demonstrate "an interest relating

20  to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a). "To

21  demonstrate a significant protectable interest, an applicant must establish that the interest is

22  protectable under some law and that there is a relationship between the legally protected interest and

23  the claims at issue." *Citizens for Balanced Use*, 647 F.3d at 897. The interest test "is a practical,

24  threshold inquiry, and no specific legal or equitable interest need be established." *Id.* (internal

25  quotations and alterations omitted). Moreover, it "is primarily a practical guide to disposing of

26  lawsuits by involving as many apparently concerned persons as is compatible with efficiency and

27  due process." *Los Angeles*, 288 F.3d at 398.

28         The lawsuit filed by KOR Produce against Thomson relates to damages suffered by KOR

1   Produce following the recall of Thomson's onions implicated in the *Salmonella* Outbreak.

2   Similarly, this action arises from the Intervenor-Plaintiffs' *Salmonella* infections which resulted

3   from their consumption of contaminated onions sourced from Thomson, and which were later

4   recalled due to potential *Salmonella* contamination. As a result, the Intervenor-Plaintiffs have an

5   interest in the subject of the action by KOR Produce against Thomson.

6          As noted above, Intervenor-Plaintiffs are currently engaged in substantially similar court

7   cases against Thomson arising out of the same loss and concerning the similar set of facts.

8   Intervention would therefore assist the parties to better coordinate discovery and any other motion

9   proceedings and practices that would otherwise be duplicated if this case and Intervenor-Plaintiffs'

10  Cases were to proceed independently.

11         **C.  Intervention is necessary to protect the Intervenor-Plaintiffs' interests.**

12         Rule 24(a) also requires Intervenor-Plaintiffs to show that the litigation "may, as a

13  practical matter, impair or impede [their] interest." Fed. R. Civ. P. 24(a)(2). "If an absentee would

14  be substantially affected in a practical sense by the determination made in an action, he should, as a

15  general rule, be entitled to intervene." *Citizens for Balanced Use*, 647 F.3d at 898 (citing Fed. R.

16  Civ. P. 24 Advisory Committee's Note; *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822

17  (9th Cir. 2001)). After finding that an intervenor-applicant has a significant protectable interest, the

18  Ninth Circuit often has "little difficulty concluding that the disposition of the case may, as a

19  practical matter, affect it." Id. (quoting Lockyer, 450 F.3d at 442).

20         The Intervenor-Plaintiffs do, as a matter of fact, have protectable interest in the litigation. As

21  noted already, the Intervenor-Plaintiffs suffered damages following their respective *Salmonella*

22  infections which resulted from consumption of the contaminated onions sourced from Thomson,

23  and which are the subject of the recall and this litigation. Allowing this case to proceed without

24  Intervenor-Plaintiffs' participation as plaintiffs would impair their ability to protect their interests in

25  fully recovering from Thomson's conduct.

26         **D.  The Intervenor-Plaintiffs' interests cannot be adequately represented by the**

27              **current parties to this action.**

28         The fourth and final element to justify intervention as of right is inadequate representation of

MURPHY & MURPHY LAW OFFICES
4482 Market Street, Ste 407
Ventura, CA 93003
Telephone (805) 330-3393
Facsimile (702) 369-9630

MURPHY & MURPHY LAW OFFICES
4482 Market Street, Ste 407
Ventura, CA 93003
Telephone (805) 330-3393
Facsimile (702) 369-9630

1    Intervenor-Plaintiffs' interests by existing parties to the litigation. Fed. R. Civ. P. 24(a)(2). The

2    Ninth Circuit considers three factors to determine adequacy of representation: "(1) whether the

3    interest of a present party is such that it will undoubtedly make all of a proposed intervenor's

4    arguments; (2) whether the present party is capable and willing to make such arguments; and (3)

5    whether a proposed intervenor would offer any necessary elements to the proceeding that other

6    parties would neglect." *Citizens for Balanced Use,* 647 F.3d at 898. "The burden of showing

7    inadequacy of representation is minimal and satisfied if the applicant can demonstrate that

8    representation of its interests may be inadequate." Id.

9          The existing parties to this litigation cannot adequately represent the Intervenor-Plaintiffs'

10   interests. KOR Produce cannot attend to the Intervenor-Plaintiffs' legal interests. If anything, KOR

11   Produce has an interest not to attend to the Intervenor-Plaintiffs' legal interest as this may

12   potentially affect KOR Produce recoverable damages in this action.

13         Furthermore, the Intervenor-Plaintiffs' interests are not identical to KOR Produce's such

14   that KOR Produce will "undoubtedly" make all the Intervenor-Plaintiffs' arguments.

15   **II.    ALTERNATIVELY, THE INTERVENOR-PLAINTIFFS SHOULD BE PERMITTED**

16   **TO INTERVENE UNDER RULE 24(b)**

17         In the alternative, this Court should grant Intervenor-Plaintiffs' permissive intervention

18   under Rule 24(b). District courts have discretion to grant permissive intervention where the

19   applicant shows "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the

20   applicant's claim or defense, and the main action, have a question of law or a question of fact in

21   common." *Los Angeles*, 288 F.3d at 403. "In exercising its discretion, the court must consider

22   whether the intervention will unduly delay or prejudice the adjudication of the original parties'

23   rights." Fed. R. Civ. P. 24(b)(3).

24         As discussed in Part I.A, *supra*, this motion is timely filed. Because the litigation is in its

25   very early stages, intervention would not "unduly delay or prejudice the adjudication of the original

26   parties' rights." Fed. R. Civ. P. 24(b)(3). Further, Intervenor-Plaintiffs' allegations overlap with the

27   main action in that they all assert, *inter alia,* breach of warranty and negligence on the part of

28   Thomson.

Further, this Court also has jurisdiction pursuant to 28 U.S.C. § 1332. The Intervenor-Plaintiffs, who reside in different states; KOR Produce, a Pennsylvania limited liability company, and Thomson International, a California corporation, are citizens of different states; and the amount in controversy exceeds $75,000.00, exclusive of interests and costs. Venue in this court is proper pursuant to 28 U.S.C. § 1391(a)(2).

Therefore, Intervenor-Plaintiffs also satisfy the requirements for permissive intervention under Rule 24(b).

## **CONCLUSION**

For the reasons discussed above, the Intervenor-Plaintiffs respectfully request that the Court grant intervention as of right pursuant to Rule 24(a). In the alternative, this Court should grant the Intervenor-Plaintiffs permissive intervention under Rule 24(b).

DATED July 15, 2022 .

Respectfully Submitted,

MURPHY & MURPHY LAW OFFICES

Craig Murphy, Esq.
SBN 314526
4482 Market Street, Ste 407
Ventura, CA  93003
Phone:  (805) 330-3393
Fax:  (702) 369-9630
craig@nvpilaw.com
Attorney for Intervenor-Plaintiffs

## **CERTIFICATE OF SERVICE**

Pursuant to Rule 5(b) of the Federal Rules of Civil Procedure, I hereby certify that I am an employee of MURPHY & MURPHY LAW OFFICES, and that on July 15, 2022,  the foregoing was filed with the Clerk of Court through the Court's CM/ECF system and thereby served upon all parties registered thereon for service in this matter.

_____
Employee of Murphy & Murphy Law Offices

MURPHY & MURPHY LAW OFFICES
4482 Market Street, Ste 407
Ventura, CA  93003
Telephone (805) 330-3393
Facsimile (702) 369-9630